UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

------------------------------------------------------------------
| SAVE THE SOUND, INC. | : | CIVIL ACTION NO. |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| TOWN OF REDDING | : | |
| | : | December 13, 2021 |
| Defendant | : | |
| | : | |
------------------------------------------------------------------

**COMPLAINT**

**INTRODUCTION**

1. Plaintiff Save the Sound, Inc., brings this citizen suit pursuant to Section 505(a)(1) of the Clean Water Act ("the Act" or CWA), 33 U.S.C. § 1365(a)(1), against Defendant the Town of Redding ("the Town") to address and abate its continuing violations of the Clean Water Act, and to bring the Town into compliance with the requirements of the General Permit for the Discharge of Stormwater from Small Municipal Separate Storm Sewer Systems ("General Permit") to prevent the Town from continuing to cause, and contribute to, the pollution and impairment of Connecticut waterways.

2. Defendant Town of Redding has multiple waterbodies that are classified as "impaired" waters pursuant to 40 C.F.R. § 130.7, meaning the waterbodies fail to meet certain water quality standards, which makes them unsuitable for certain recreational uses, unable to support aquatic life, and threaten human and environmental health. The impaired waterbodies located in the Defendant Town of Redding include the Norwalk River and the Little River. These waterbodies are defined as impaired due to stormwater pollution.

3. Stormwater runoff is a major source of water pollution in the United States. Each time it rains, stormwater carries metals, oils, fertilizers, and other pollutants into streams, lakes, and Long Island Sound. These pollutants impair water quality and render the receiving waters unsuitable for human recreation and unable to support aquatic life.

4. Stormwater pollution is regulated through general permits issued under the Clean Water Act. All municipalities in urbanized areas with municipal separate storm sewer systems (known as "MS4s") must register for the General Permit for the Discharge of Stormwater from Small Municipal Separate Storm Sewer Systems. The latest version of the General Permit was issued on January 20, 2016 and went into effect on July 1, 2017.

5. The General Permit requires towns to adopt best practices and take certain measures to reduce stormwater pollution such as mapping its stormwater sewer system, tracking down and stopping harmful discharges, implementing best practices and legal authorities, and reducing impervious surface. These actions must be implemented and then documented in annual reports filed with the Connecticut Department of Energy and Environmental Protection ("DEEP") and made available to the public.

6. Defendant Town of Redding is a registered municipality under the General Permit and, therefore, must comply with all of the General Permit's requirements.

7. Defendant has failed to comply with the requirements of the General Permit. Most fundamentally, the General Permit requires Defendant to submit Annual Reports to DEEP demonstrating implementation of and compliance with the General Permit's requirements, but Defendant has not submitted reports for the years 2017, 2018, 2019, or 2020. On information and belief, Defendant has also failed to comply with the substantive provisions of the permit such as

detecting and preventing illicit discharges, completely mapping their system, implementing legal authorities, and tracking and reducing impervious cover.

8. Defendant's failure to comply with the General Permit requirements is contributing to the pollution and impairment of Connecticut's waterways which, in turn, is perpetuating the Town of Redding's endemic stormwater pollution problem. Strict enforcement of the General Permit requirements is vital for protecting and improving these impaired bodies of water in Connecticut.

## JURISDICTION AND VENUE

9. Jurisdiction is conferred upon this court pursuant to Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a), and 28 U.S.C. § 1331.

10. On September 30, 2021, Plaintiff gave notice of the violations and Plaintiff's intent to file suit to DEEP, the Administrator of the United States Environmental Protection Agency (EPA), the Regional Administrator of EPA Region 1, and Defendant Town of Redding, as required by Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A).

11. Therefore, pursuant to 33 U.S.C. §§ 1365(a) and (b), Plaintiff Save the Sound complied with the notice requirements of the CWA by putting Defendant Town of Redding on notice of its intent to file suit in the United States District Court following the expiration of the required sixty (60) day notice period.

12. More than sixty (60) days have passed since notice was served pursuant to Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A).

13. As of the date of the filing of this complaint, neither EPA nor DEEP has commenced or diligently prosecuted: (1) a court action to redress violations under Section 505(b)(1)(B) of the CWA, 33 U.S.C. § 1365(b)(1)(B); or (2) an administrative penalty action that would preempt this action pursuant to Section 309(g)(6)(A) of the CWA, 33 U.S.C. § 1319(g)(6)(A).

14.     Venue is appropriate in this district pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the source of the violations is in Redding, Connecticut, which is located within this judicial district.

## PARTIES

15.     Plaintiff Save the Sound, Inc. ("Save the Sound"), formerly known as Connecticut Fund for the Environment, was founded in 1978 to protect and improve the land, air, and water of Connecticut using advocacy and scientific expertise to achieve results that benefit our environment for current and future generations. Save the Sound seeks to protect, conserve, and protect the environmental health and natural resources of the Long Island Sound. Save the Sound is a 501(c)(3) not-for-profit corporation, incorporated under the laws of the State of Connecticut, with its principal place of business at 900 Chapel Street, New Haven, CT 06510. Save the Sound represents over 4,200 member households and 10,000 activists in Connecticut and New York. Save the Sound has represented the interests of its membership in legal proceedings before trial and appellate courts and federal and state administrative agencies in various proceedings in which Save the Sound sought to protect the environment and natural resources for its members and the citizens of Connecticut.

16.     Save the Sound is a "citizen" for purposes of Section 505 of the CWA, 33 U.S.C. § 1365, and files this citizen suit on behalf of itself and its members.

17.     Defendant Town of Redding has multiple waterbodies that are classified as "impaired" waters pursuant to 40 C.F.R. § 130.7, meaning the waterbodies fail to meet certain water quality standards, which makes them unsuitable for certain recreational uses, unable to support aquatic life, and threaten human and environmental health. These waterbodies are impaired under the statutory definition because of stormwater pollution.

18.     The violations alleged herein cause or contribute to pollution in waters used and enjoyed by Save the Sound's members, and are injurious to human health, wildlife, recreational, and commercial activities in or around these rivers and waterways, and other uses pursued and enjoyed by Save the Sound members. The violations alleged herein result in public health risks and negative impacts to waterways, threaten the health and welfare of Save the Sound members, impair and threaten their use and enjoyment of rivers and waterways of the state, Long Island Sound, and other waters, and deny them the level of water quality to which they are entitled under the Clean Water Act. Save the Sound's members have an interest that is adversely affected by Defendant's noncompliance with the requirements of the General Permit.

19.     Defendant Town of Redding is a municipality within the meaning of Section 502(4) of the CWA, 33 U.S.C. § 1362(4), and is a "person" within the meaning of Section 502(5) of the CWA, 33 U.S.C. § 1362(5).

20.     The relief sought herein will redress the harms to Plaintiffs and their members caused by Defendant's activities.

## THE CLEAN WATER ACT

21.     Congress enacted the Clean Water Act in 1972 to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." CWA Section 101(a), 33 U.S.C. § 1251(a). In furtherance of this goal, the Act provides a comprehensive approach for the regulation of pollution discharged into the waters of the United States.

22.     The Clean Water Act aims to improve the quality of waterbodies with the dual-purpose of making them "fishable" and "swimmable." *See* CWA Section 101(a), 33 U.S.C. § 1251(a). Section 303 of the Act requires states to adopt surface water quality standards to monitor and improve the health of their waters.

23. Under the CWA, states are also responsible for identifying and ranking waterbodies that fail to meet water quality standards. CWA Section 303(d), 33 U.S.C. § 1313(d). These "impaired waters" are not suitable for certain uses and may threaten human and environmental health.

## STORMWATER RUNOFF POLLUTION

24. Stormwater runoff is the primary driver of increasing water pollution in Connecticut today. Each time it rains polluted stormwater runs towards streams, lakes, and Long Island Sound, making water unhealthy for human recreation and aquatic life.

25. Stormwater pollution is one of the most harmful sources of water pollution because it collects metals, oils, fertilizers, waste products, and other pollutants and carries them into rivers, lakes, and other surface bodies of water.

26. When these pollutants are collected by stormwater, receiving waters, such as the Connecticut River and Long Island Sound, become polluted with toxins and chemicals that can kill aquatic life, interfere with plant growth, and prevent recreational activities from taking place.

27. Stormwater pollution has become an increasing concern as extreme precipitation events are becoming more common. Connecticut has experienced serious flooding from multiple tropical storms in 2021. This growing trend suggests that, if it continues, Connecticut will experience greater rainfall in shorter bursts, so stormwater will be even less likely to infiltrate the ground and will lead to ever more pollution.

28. A failure to address stormwater pollution with adequate stormwater management systems and practices will exacerbate water quality issues.

## STORMWATER PERMITS

29. To address the impacts of stormwater, the Clean Water Act has identified municipal separate storm sewer systems ("MS4s"), which convey untreated stormwater directly to

waterbodies, as a source of water pollution. CWA Section 402(p)(2), 33 U.S.C. § 1342(p)(2). Under the Act, the State of Connecticut has the authority to issue a statewide General Permit for MS4s. CWA Section 402(p)(2)(E), 33 U.S.C. § 1342(p)(2)(E). Any Connecticut municipality with a population over 1,000 people in an "urbanized area," as defined by the U.S. Census Bureau ("MS4 Municipality") is required to register for the General Permit.

30. The MS4 General Permit is re-issued every 5 years. Conn. Gen. Stat. § 22a-430(c).

31. Under the terms of the 2017 General Permit, MS4 municipalities are required to comply with a set of tasks, either on an annual basis or by a certain implementation deadline during the lifespan of the permit. The most basic of these tasks is to submit an Annual Report, due to DEEP on April 1 each year. In the Annual Report, the municipality must self-report its progress in complying with the other requirements of the General Permit.

## FACTUAL ALLEGATIONS

32. Defendants' stormwater discharges contribute to stormwater pollution in and around Redding.

33. Due to stormwater runoff, multiple bodies of water located either entirely or partially within Defendant Town of Redding's borders have been identified as impaired waterbodies. These waterbodies include the Norwalk River and the Little River.

34. Defendant Town of Redding has a mandatory General Permit registration with permit number GSM000011 and is therefore subject to the General Permit requirements.

35. Defendant Town of Redding has failed to comply with the basic requirements of the General Permit and continues to be in noncompliance.

36. Defendant Town of Redding has not submitted its Annual Reports for the years of 2017, 2018, 2019, or 2020.

37. Defendant must submit Annual Reports to certify it has completed the other tasks required by the General Permit.

38. Upon information and belief, Defendant has not only failed to report on these tasks, as required by the General Permit, but has also failed to perform many of the tasks required by the permit.

39. Defendant Town of Redding's continuing failure to demonstrate compliance with each requirement of the General Permit constitutes a separate and distinct violation of the Clean Water Act for each day that the violation continues beyond the filing deadline.

40. To assist Defendant and MS4 municipalities in understanding and complying with their obligations under the General Permit, DEEP hired the University of Connecticut's Center for Land Use Education and Research ("CLEAR") to provide technical and other assistance to MS4 municipalities. In this vein, CLEAR has set up a listserv of municipalities and regularly educates them about their responsibilities and obligations under the permit while also providing technical support, such as mapping of total impervious area cover in the municipality.

41. Defendant Town of Redding has failed to comply with the most basic provisions of the permit despite these educational efforts and technical resources.

42. Save the Sound has also attempted on multiple occasions to notify and assist Redding, along with other MS4 municipalities, about the need to perform these actions and comply with its permit requirements in a timely manner. On January 26, 2021, Save the Sound emailed a listserv of MS4 municipalities, including Redding, about its efforts to review compliance with the General Permit ahead of the February 14 deadline for the draft 2020 Annual Report. On March 22, 2021, Save the Sound sent another email to all MS4 municipalities listserv, including

Redding, informing violating municipalities of their noncompliance and reminding them of the April 1 deadline to submit the final 2020 Annual Report.

43. Despite these outreach and educational efforts directed at towns, Defendant has not complied with the General Permit requirements.

## CLAIM FOR RELIEF

## FAILURE TO COMPLY WITH GENERAL PERMIT REQUIREMENTS

44. Paragraphs 1 through 43 are incorporated herein by reference.

45. The citizen suit provision of the Clean Water Act, Section 505(a)(1), 33 U.S.C. § 1365(a)(1), authorizes any citizen to commence a civil action against any person alleged to be in violation of "an effluent standard or limitation." Section 505(f)(7) defines "an effluent standard or limitation" to include "a permit or condition of a permit issued under section 1342 of this title." 33 U.S.C. § 1365(f)(7).

46. Defendant has failed to file required annual reports for the years of 2017, 2018, 2019 and 2020 and therefore has failed to report compliance with the requirements of the 2017 General Permit, issued under the authority of Section 22a-430b of the Connecticut General Statutes as required by the permit. (General Permit Section 6(j)). The permit required registered municipalities to:

    a. Implement an employee stormwater management training program by July 1, 2017.

    b. Implement public education and outreach programs by July 1, 2017.

    c. Implement an interdepartmental coordination plan by July 1, 2017.

    d. Implement a site plan review for stormwater practices by July 1, 2017.

    e. Conduct site inspections for stormwater practices by July 1, 2017.

f. Receive public input on development projects by July 1, 2017.

g. Notify developers of the DEEP construction general permit by July 1, 2017.

h. Track the additions and subtractions to the Directly Connected Impervious Area (DCIA) that contributes stormwater runoff to each of its MS4 outfalls by July 1, 2017.

i. Implement a citizen reporting program by July 1, 2017.

j. Record illicit discharge abatement activities by July 1, 2017.

k. Maintain an inventory of known Sanitary Sewer Overflows (SSOs) within a five-year look back period by October 30, 2017.

l. Post a draft of its Annual Report by February 15 of each year, starting in 2018.

m. Submit a final version of the Annual Report by April 1 of each year, starting in 2018.

n. Sweep the streets in Priority Areas at least once per year.

o. Implement MS4 Property Operations and Management (O&M).

p. Log catch basin inspections and cleanings, including the volume of material removed.

q. Develop and implement a standard operating procedure for deicing material management.

r. Implement a standard operating procedure for snow and ice control to minimize stormwater pollution.

s. Establish a catch basin inspection and cleaning schedule by July 1, 2018.

t. Develop an alternate plan for sweeping streets outside of the Priority Area, if they are not swept once a year, by July 1, 2018.

    u. Develop a written illicit Discharge Detention and Elimination (IDDE) program by July 1, 2018.

    v. Implement IDDE legal authority by July 1, 2018.

    w. Map all MS4 outfalls by July 1, 2019.

    x. Update the legal authority to minimize stormwater pollution on construction sites by July 1, 2019.

    y. Create a maintenance plan for stormwater ponds and treatment structures by July 1, 2019.

    z. Determine a baseline DCIA by July 1, 2020.

    aa. Develop a retrofit plan by July 1, 2020.

    bb. Complete dry weather outfall sampling (for both high and low priority catchments) by July 1, 2020.

    cc. Complete detailed MS4 mapping by July 1, 2020.

    dd. Inspect all the catch basins in Priority Areas by July 1, 2020.

    ee. Review regulations for low impact development (LID) barriers by July 1, 2021.

    ff. Implement legal authority for stormwater retention standards by July 1, 2021.

    gg. Monitor their six "worst" outfalls to impaired waters annually by July 1, 2021.

    hh. Implement the projects in their retrofit plan by July 1, 2021.

47. On information and belief, with respect to many of the items above, not only did Defendant fail to report on each requirement as required by the General Permit but Defendant also failed to substantively comply with the requirement itself.

48. The failure to comply through filing required annual reports or performing actions required by the General Permit, as set forth above, constitutes a separate and distinct violation of the Clean Water Act for each day that the violation continues beyond the filing deadline.

49. The Defendant's failures to comply with the requirements of the General Permit are ongoing and continuous.

## RELIEF SOUGHT

50. Wherefore, Plaintiff respectfully requests that the Court grant the following relief:

    a. Declare that the Defendant has violated and continues to be in violation of the Clean Water Act as alleged herein;

    b. Enjoin the Defendant from further violations of the Clean Water Act;

    c. Order Defendant to immediately comply fully with all applicable requirements of the General Permit;

    d. Order Defendant to take appropriate actions to restore the quality of the waters impaired by its violations;

    e. Order the Defendant to pay a civil penalty not to exceed $56,460 per day, per violation, for all violations of the CWA occurring after November 2, 2015, where penalties are assessed on or after December 23, 2020, pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C § 1319(d), 1365(a), and 40 C.F.R §§ 19.1-19.4;

    f. Award Plaintiff costs of litigation, including reasonable attorney fees and expert witness fees pursuant to Section 505(d), 33 U.S.C. §1365(d); and

    g. Award such other relief as the Court deems just and fair.

Dated this 13th day of December, 2021.

                                                    SAVE THE SOUND

By:   /s/ Roger Reynolds  
       Roger Reynolds, Esq.  
       Senior Legal Counsel  
       Federal Bar #ct18126  
       Save the Sound  
       900 Chapel Street, Suite 2202  
       New Haven, CT 06510  
       Phone: (203) 787-0646 ext. 105  
       Fax: (203) 787-0246  
       Email: rreynolds@savethesound.org

       /s/ Katherine McKeon  
       Katherine McKeon  
       Certified Legal Intern  
       University of Connecticut  
       Environmental Law Clinic  
       Save the Sound  
       900 Chapel Street, Suite 2202  
       New Haven, CT 06510

ITS ATTORNEYS